THE STATE OF FLORIDA, on Relation of Albert O. Helseth, et als., County Commissioners, *Plaintiffs in Error*, v. J. C. DuBose, et als., Members of City Council, et als., *Defendants in Error*.

Division A.

Opinion filed April 21, 1930.

*C. P. Diamond,* for Plaintiff in Error;

*Vocelle & Mitchell,* for Defendant in Error.

TERRELL, C. J.—The City of Vero Beach in Indian River County, Florida, enacted a ''zoning ordinance'' for the purpose of regulating the location, construction, bulk, and height of buildings to be erected therein. Pursuant to this ordinance the board of county commissioners of said county applied to the proper authority for a permit to erect a jail on the property owned by the county and covered by the term of the ''zoning ordinance.'' This permit was refused and on application of the said board of county commissioners an alternative writ of mandamus was directed to the city council of Vero Beach requiring it to grant said permit or to show cause why it should not

be granted. A return and motion to quash the alternative writ were seasonably entered. The motion to quash was granted and a motion for peremptory writ was denied. Writ of error was taken to that order.

Four assignments of error raise these questions: (1) Had the City of Vero Beach power to pass the "zoning ordinance," (2) If it had such power, was the "zoning ordinance" so enacted in accord with the State or Federal Constitution, and (3) If it was authorized to do so the ordinance so enacted was an arbitrary and unreasonable exercise of the power vested in the City of Vero Beach.

Building zone laws made their advent in this country about thirty years ago and are the product of the ever increasing complex and difficult problems that affect urban life. Such laws are restrictions on the use of private property that can be justified only in some aspect of the police power asserted in the interest of the public welfare and cannot be enacted or enforced by municipalities without specific legislative authorization therefor. Euclid v. Ambler Realty Company, 272 U. S. 365, 47 Sup. Ct. R. 114, 71 L. Ed. 303, and cases cited; State ex rel. Shad v. Fowler, 90 Fla. 155, 105 So. R. 733; Citizens Insurance Company v. Barnes, 98 Fla. 933, 124 So. R. 722.

Chapter 11262, Acts of 1925, as amended by Chapter 14439, Acts of 1929, Laws of Florida, being the Charter Acts of the City of Vero Beach, authorizes the said city to enact zoning ordinances. (See Sections 86 to 90 inclusive of the first enumerated Act.) Pursuant to authority vested in it by Chapter 11262, Acts of 1925, the City of Vero Beach enacted General Ordinance Number 197, which is quoted in the record and appears to conform generally to such ordinances enacted under the standard State zoning act which has been passed in thirty or more states

throughout the country and has been held valid in most of them. We are not unmindful of some decisions to the contrary. See Euclid v. Ambler Realty Company, *supra*, citing decisions holding both ways. We think, therefore, the city had power to enact a valid zoning ordinance.

To uphold the constitutional validity of the ordinance under review, defendant in error relies on Euclid v. Ambler Realty Company, *supra*. An examination of this case reveals many striking parallels, as to facts, with the case at bar. The relief sought in Euclid v. Ambler Realty Company was by injunction to restrain the enforcement of any of the restrictions, limitations, or conditions of the ordinance, the gravamen of the complainant being that the lands of appellee could not be sold for certain enumerated uses because of the general and broad restraints of the ordinance. Against this general assault the court upheld the validity of the ordinance but it also specifically held that, if ever, the provisions of the ordinance set forth in tedious and minute detail, came to be concretely applied to particular premises, including those of the appellee, or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable. In other words, when the attack on a zoning ordinance is on the broad ground ''that the mere existence and threatened enforcement of the ordinance, by materially and adversely affecting values and curtailing the opportunities of the market constitute a present and irreparable injury, the Court will not scrutinize its provisions, sentence by sentence, to ascertain by a piecemeal dissection whether there may be here and there provisions of a minor character or relating to matters of administration, or not shown to contribute to the injury complained of, which, if attacked separately, might not withstand the test of constitutionality.''

Euclid v. Ambler Realty Company, *supra*, is the leading case in this country on the validity of zoning ordinances generally, that is to say, when such validity is challenged on the broad grounds as therein stated, but in the case at bar the ordinance brought in question is not so challenged. Here it is contended that a concrete application of the provisions of the ordinance to the premises of appellant amounts to an unconstitutional, an arbitrary, and an unreasonable exercise of legislative power. Before this contention can be upheld it must be shown that the provisions of the ordinance as applied to the locus in question are clearly arbitrary and unreasonable and have no substantial relation to the public health, safety, morals, or general welfare. Jacobson v. Massachusetts, 197 U. S. 11, 25 Sup. Ct. R. 358, 49 L. Ed. 643; Cusac Co. v. City of Chicago, 242 U. S. 526, 37 Sup. Ct. R. 190, 61 L. Ed. 472; Euclid v. Ambler Realty Company, *supra*.

In testing the validity of specific provisions of zoning ordinances, such as we have here, all the courts adhere to the policy of dealing with them as cases arise in which they are directly involved and in which the question of validity is pointedly raised. They consistently decline to settle questions beyond the necessities of the immediate case. This Court is committed to the "method of a gradual approach to the general, by a systematically guarded application and extension of constitutional principles to particular cases as they arise, rather than by out of hand attempts to establish general rules to which future cases must be fitted." This doctrine is peculiarly applicable when applying the due process clause of the fourteenth amendment to the exercise of the police power as is the case here. It is not out of place to say in this connection that no decision is authority on any question not raised and considered, although it may be involved in the facts of the case.

Appellants were refused their permit to construct a jail on the county premises for the following reasons: (1) It will greatly increase taxes, (2) It will increase rather than diminish traffic about our public schools, and (3) We believe it will substantially and permanently injure the appropriate use of our school property. No facts whatever are shown on which these reasons are predicated, or that relatively they have any relation to the health, safety, morals, or general welfare of the community. It is shown that the population of Vero Beach is about twenty-five hundred, that the locus for the jail is in an undeveloped part of the city, that its area is five acres, that if constructed at a point nearest the school building it would be nearly six hundred feet removed therefrom, and that if constructed at the point of the locus most remote from the school building it would be one thousand feet removed therefrom.

Under our social order jails, penal institutions, and public schools are all public necessities. For its purpose, one as much so as the other. The jail and its purpose produces a different reaction from that produced by the public school, at the same time it must be provided and the law imposes on appellants the duty of providing the one brought in question. Its provision necessarily involves additional tax burden but there is no showing here that the burden would be any greater to construct it at the locus proposed than it would at any other nor that it would be less objectionable. It is of course desirable to reduce traffic about public school buildings to a minimum but here the proposed jail and school building are somewhat remote from each other and since it is not fashionable, popular, or fascinating to go to jail either as an inmate or a spectator and very few have business there, in the absence of showing to that effect we see no reason why the presence of a jail at

the locus described should increase traffic about the school. The mere belief on the part of defendant in error, that the erection of a jail as proposed would substantially and permanently injure the appropriate use of school property is not sufficient to overcome the inherent right of the plaintiff in error to appropriate the locus to the use proposed. Not a finding of appellants on which they refused the permit to construct the jail is supported by a solitary fact. It is not suggested that the jail would be a nuisance, or that it would unduly affect the health, convenience, or morals of the community, nor is there any legislative determination to this effect.

The right of an owner to devote his land to any legitimate use is property within the terms of the Constitution and the Legislature may not under the guise of the police power impose unnecessary or unreasonable restrictions upon such use. State of Washington ex rel. Seattle Title Trust Company v. Roberge, 278 U. S. 116, 49 Sup. Ct. R. 50, 73 L. Ed. 210, and cases cited. It is true that this rule applies to and may be invoked by the individual as against the public while in the case at bar we have the instance of one public instrumentality invoking it against another. Since the rule was made for the protection of property rights under the facts shown to exist in this case, the place of vestiture of title becomes immaterial.

This Court is committed to the doctrine that courts should not set aside the determination of public officers relative to municipal zoning ordinances, unless it is clear that their action has no foundation in reason and is a mere arbitrary exercise of power without reference to public health, morals, safety, or welfare. In its general scope the ordinance under attack is not shown to be violative of the State or Federal Constitution. But on the showing made here as to the lands of appellants we think it is arbitrary

and unreasonable. Nectow v. City of Cambridge, 277 U. S. 183, 48 Sup. Ct. R. 447, 72 L. Ed. 842; State of Washington ex rel. Seattle Title Trust Company v. Roberge, 278 U. S. 116, 49 Sup. Ct. R. 50, 73 L. Ed. 210.

The judgment below is reversed.

Reversed.

ELLIS AND BROWN, J. J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.