299 So.2d 652 (1974)
ORANGE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
The CITY OF APOPKA, Florida, et al., Appellees.
CLARCONA IMPROVEMENT ASSOCIATION, a Florida Corporation Not for Profit, Appellant,
v.
The CITY OF APOPKA, Florida, et al., Appellees.
Nos. 72-1204, 72-1209.
District Court of Appeal of Florida, Fourth District.
February 22, 1974.
On Rehearing April 11, 1974.
*653 Steven R. Bechtel of Mateer & Harbert, Orlando, for appellant Orange County.
Carter A. Bradford, of Bradford, Oswald, Tharp & Fletcher, Orlando, for appellant Clarcona Improvement Assn.
William G. Mitchell, of Giles, Hedrick & Robinson, Orlando, for appellees.
DOWNEY, Judge.
These consolidated appeals are companions to case number 73-273, 299 So.2d 657, filed this day.
The cities of Apopka, Ocoee and Winter Garden, together with the individuals constituting the Tri-City Airport Authority filed suit for declaratory judgment in the Circuit Court of Orange County, Florida, against Orange County and the Clarcona Improvement Association. The complaint alleges that the plaintiffs had determined there was a need for an airport facility in reasonable proximity to said municipalities; that proceeding under authority of The Airport Law of 1945, Chapter 22846, Laws of Florida, 1945, they had agreed on a proposed site located in Orange County, outside of any municipality. The complaint further alleges that Orange County had zoned the property in question as an A-1 agricultural district which would allow an airport only as a special exception requiring prior approval from the appropriate zoning authority. The complaint then alleges that Orange County insists plaintiffs must obtain approval for such proposed use, while plaintiffs assert they are exempt from Orange County zoning regulations as regards the use of this property as an airport. Being in doubt as to their rights, plaintiffs petition the court to declare that they are entitled to acquire land outside their municipal boundaries and use it for airport purposes without being subject to the zoning regulations of Orange County as they pertain to the use of such property as an airport.
Prior to the filing of this suit for declaratory judgment the plaintiffs had applied to the Orange County Zoning Board of Adjustment for a special exception authorizing the proposed use of the property in question as an airport. After a hearing on the application it was denied. Plaintiffs appealed to the board of county commissioners where, after a hearing de novo, the commission affirmed the Board of Zoning Adjustment. Plaintiffs then filed a petition for writ of certiorari in the circuit court. While that proceeding was pending plaintiffs filed this suit for declaratory judgment.
The parties filed a stipulation of facts which, among other things, authorized the court to take judicial notice of the court file in the certiorari proceeding. In a well considered final judgment the trial judge held that the pending certiorari proceeding did not constitute an election of remedies precluding the maintenance of the suit for declaratory judgment. It further held that:
"due to the broad powers granted the Cities by the Airport Law of 1945 which authorizes them to establish airports with the legislative declaration that this is for governmental purposes, plus the power of eminent domain given the Cities to accomplish this purpose, that Orange County, Florida cannot through the operation of a zoning law prevent the use of lands bought or condemned by the Plaintiffs for the purpose of implementing their desires to construct an airport and supporting facilities."
The court then enjoined Orange County from attempting to enforce its zoning laws so as to interfere with the plaintiffs' proposed airport use of the property.
Simultaneously with the entry of the declaratory judgment the trial judge entered a judgment in the certiorari proceeding in which he found the petition to be moot as a result of his decision in the declaratory judgment action. Nevertheless, he proceeded to "enter a judgment in reference to said petition." Essentially, he found in said judgment that there was substantial competent evidence from which the board *654 of county commissioners could have concluded the exception should be denied.
The points on appeal designate two errors of the trial court for reversal, the first being that the lower court erred in failing to grant their motion to dismiss. This point is without merit. Publico v. Building Inspector of Quincy, 336 Mass. 152, 142 N.E.2d 767 (1957). The second point is directed to the holding that the plaintiffs below were exempt from the provisions of the Orange County Zoning Act in exercising authority under The Airport Zoning Law of 1945 (Chapter 332, F.S. 1971, F.S.A).
The trial court was persuaded to reach the conclusion that the appellees were immune from the operation of the county zoning laws with reference to the proposed use of the property because the appellees in implementing the grant of authority contained in the Airport Law were exercising a governmental function as opposed to a proprietary function.
While there is a wealth of authority which relies upon the governmental function-proprietary function test in resolving problems raised by zoning conflicts between governmental units, many cases and writers criticize the distinction as illusory and as an oversimplistic categorization. Washington Twp. v. Ridgewood Village, 26 N.J. 578, 141 A.2d 308 (1958); 2 Anderson, American Law of Zoning, § 9.05; 84 Harvard Law Review 869. This concept has also been relied upon recently in holding that a governmental unit is not bound by its own zoning regulations when acting in a governmental capacity. A1A Mobile Home Park, Inc. v. Brevard County, Fla. App. 1971, 246 So.2d 126; Metropolitan Dade Cty. v. Parkway Condominium Ass'n, Fla.App. 1973, 281 So.2d 68. Then too, some cases have relied on that rule to justify holding one governmental unit not bound by another governmental unit's zoning if the former is acting in a governmental capacity. Aviation Services v. Board of Adjustment, 20 N.J. 275, 119 A.2d 761 (1956).
As indicated in the Florida decisions cited above, the established law of Florida seems to be that a governmental unit is not bound by its own zoning regulations when acting in a governmental capacity. However, we decline to extend application of the governmental function  proprietary function test for resolving zoning conflicts to the situation in which a governmental unit proposes to use property owned by it in the jurisdiction of another governmental unit contrary to existing zoning regulations. We can see a clear distinction between these two situations. In the first instance, a governmental body upon the adoption of a comprehensive zoning ordinance may exempt itself from regulations applicable to private interests. Jefferson National Bank v. City of Miami Beach, Fla.App. 1972, 267 So.2d 100. Then too, the closer one is to his own bailiwick the greater care he is likely to exert for its well-being. One city is less likely to be scrupulous about the location of its potentially offensive governmental activities in another city than "at home" within its own boundaries. In addition, the purpose of zoning is orderly development and the preservation of property values. Each governmental unit is charged with the responsibility of preparing a comprehensive plan which will provide optimum development in an orderly fashion. It strikes us as anomalous to allow one governmental unit charged with a specific responsibility, such as supplying housing, airports, or sewerage facilities, to enter another governmental unit and unilaterally decide to locate one of its governmental facilities anywhere it may choose. One can envision rather absurd results in the wake of such a rule. If the legislative intent underlying The Airport Law of 1945 were the granting to a municipality of absolutely unbridled power to build an airport wherever the municipality deemed it proper to do so, nothing could prevent the Tri-City Airport *655 Authority from building an airport in the finest residential area in the City of Orlando or even in the heart of downtown Orlando.
Rather than become limited by the governmental-proprietary distinction which could lead to situations which cry for relief, we feel the better rule, the rule allowing for the greatest flexibility and fairness, is one which requires that one governmental unit be bound by the zoning regulations of another governmental unit in the use of its extraterritorial property, purchased or condemned, in the absence of specific legislative authority to the contrary. In the absence of express legislative immunity from zoning, the intruding governmental unit should apply to the host governmental unit's zoning authority for a special exception or for a change in zoning, whichever is appropriate. The zoning authority is then in a position to consider and weigh the applicant's need for the use in question and its effect upon the host unit's zoning plan, neighboring property, environmental impact, and the myriad other relevant factors. If the applicant is dissatisfied with the decision of the zoning authority, it is entitled, pursuant to Section 163.250, F.S. 1971, F.S.A., to a judicial determination de novo wherein the circuit court can balance the competing public and private interests essential to an equitable resolution of the conflict. The court can consider, inter alia, the type of function involved, the applicant's legislative grant of authority, the public need therefor, the existing land use scheme, alternative locations for the facility in less restrictive zoning areas, alternative methods for providing the needed improvement, and the detriment to the adjoining landowners. If after weighing all pertinent factors the court finds the host government is acting unreasonably, the zoning ordinance should be held inapplicable to the proposed improvement, just as was done in State ex rel. Helseth v. DuBose, 99 Fla. 812, 128 So. 40 (1930).
Not only do we feel that the aforementioned rule comports with fairness and orderly development, but we also believe there is long standing support therefor in Florida. In State ex rel. Helseth v. DuBose, supra, Indian River County decided to build a county jail (a governmental function) in the City of Vero Beach on property not properly zoned therefor. When the city refused to issue a permit for the construction, the county brought suit. In holding that the application of the city zoning ordinance to the county property was arbitrary and unreasonable based on the facts of the case, the court noted the rule that the right of an owner to devote his land to any legitimate use is a property right which may not be unnecessarily or unreasonably restricted under guise of the police power. This rule applied to and might be invoked by an individual against the public or by one public instrumentality against another. However, the court went on to say, since the rule was made for the protection of property rights, the place of vestiture of title becomes immaterial. Further, it is worthy of note that the court did not simply brush the city's zoning ordinance aside as being inapplicable on the ground that the county proposed to exercise a governmental function in building the jail. It held the county subject to the city's zoning ordinance but struck down the zoning restriction as the restriction applied to this particular use based upon the surrounding facts and circumstances of the case.
We think the holding implicit in State ex rel. Helseth v. DuBose, supra, was made explicit by the Supreme Court of Minnesota in Town of Oronoco v. City of Rochester, 293 Minn. 468, 197 N.W.2d 426, in the following language:
"The general rule, as stated at 101 C.J.S. Zoning § 135, is that a governmental body is not subject to zoning restrictions where property is to be used for governmental, as opposed to proprietary, purposes. Frequently, in fact, authorities *656 possessing the right to condemn have been held, by virtue of that right, to possess exemption from zoning regulations. State ex rel. Askew v. Kopp, 330 S.W.2d 882 (Mo. 1960); Decatur Park Dist. v. Becker, 368 Ill. 442, 14 N.E.2d 490 (1938); State ex rel. St. Louis Union Trust Co. v. Ferriss, 304 S.W.2d 896 (Mo. 1957); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 113 A.2d 658 (1955). However, the trend is to limit such freedom from regulation, a trend which we believe is well within the dictates of the public interest, principally because the pungent realities of urban sprawl and overpopulation have accentuated the need for land-use planning and control that serves as foundation for the exercise of police power in the area of zoning. Consequently, in order to support the principle of enlightened land-use control, we decline to adopt in Minnesota the general rule of governmental exemption from zoning regulation.
The exigencies of the present matter, however, illustrate the core of wisdom in that general rule and the danger in too readily assuming enlightenment where none in fact may exist in the implementation of a particular local zoning policy. Therefore, we adopt a balancing-of-public-interests test for the resolution of conflicts which arise between the exercise by governmental agencies of their police power and their right of eminent domain. This is preferable to adherence to a less flexible `general rule' based simply on the form of the opposing parties rather than the substance of their conflict." 197 N.W.2d at 429.
As we indicated above, we think the Supreme Court of Florida utilized a balancing-of-public-interests test in State ex rel. Helseth v. DuBose. It is therefore proper for us to follow that test and to reject the rigid governmental function versus proprietary function test. Since we do so, we must reluctantly reverse the trial court's decision in this case. That decision below was well considered and there is abundant authority for the conclusions the court reached. See Annot. Zoning  Governmental Projects, 61 A.L.R.2d 970; 2 Yokely, Zoning Law and Practice, Chapter XXI, 3d Ed. (1965). However, for the reasons mentioned above we feel the better couse is to reject the governmental function versus proprietary function test in resolving zoning conflicts between different governmental units and to follow the balancing-of-the-competing-interests test. By doing so we hope to minimize the likelihood of horrendous consequences resulting from the exercise of a governmental function by one governmental unit within the geographical limits of a different governmental unit.
The judgment of the circuit court is reversed and the cause is remanded with directions to enter a judgment declaring that the land upon which appellees propose to build an airport pursuant to The Airport Law of 1945 is subject to Orange County's zoning laws. As we indicated in case number 73-273, the parties may then proceed further before the board of county commissioners, which should apply a balancing-of-public-interests test in considering the appeal from the decision of the Board of Zoning Adjustment.
Reversed and remanded with directions.
WALDEN and MAGER, JJ., concur.

ON PETITION FOR REHEARING
PER CURIAM.
By petition for rehearing in these cases and by petitions for rehearing in a companion case 73-273, it has been called to our attention that Orange County has not taken formal suitable action declaring its election to proceed under the provisions of Part II of the act entitled County and Municipal Planning For Future Development (163.160-163.315, F.S. 1971, F.S.A.). Accordingly, the petition for rehearing filed by appellees is granted and we recede from all references in our opinion of February *657 22, 1974, to the availability of Section 163.250, F.S. 1971, F.S.A., in these cases.
In all other respects we adhere to our opinion of February 22, 1974.
WALDEN, MAGER and DOWNEY, JJ., concur.