Mr. Christopher A. White Attorney Beaches Public Hospital Special Taxing District 1001 Blackstone Building 233 East Bay Street Jacksonville, Florida 32202
Dear Mr. White:
This is in response to your request for an opinion on the following question:
 WHETHER THE BEACHES PUBLIC HOSPITAL SPECIAL TAXING DISTRICT IS SUBJECT TO LOCAL MUNICIPAL ZONING ORDINANCES GOVERNING PROPERTY WHICH THE DISTRICT WISHES TO CONDEMN UNDER ITS POWER OF EMINENT DOMAIN.
The Beaches Public Hospital Special Taxing District, located in Jacksonville Beach, was created by Ch. 82-291, Laws of Florida. The governing body of the district, the Beaches Public Hospital Board, consists of five members and has the authority to levy ad valorem taxes for the support, operation and improvement of the district and of the hospitals, clinics and other facilities owned and operated by the district. Section 6(5), Ch. 82-291, Laws of Florida. Pursuant to s. 6(12) of the special act, the district, acting through the board, is also granted the power of eminent domain, "such power to be exercised in the manner provided by law for the state, or agencies or instrumentalities thereof." According to your letter, the Beaches Public Hospital Board is planning to build a new hospital and a prospective site has been located. The board is considering condemning the property through its power of eminent domain. However, the site is zoned C-2 (commercial) and RMF (residential multi-family) which is inconsistent with the hospital's proposed use of the area.
You therefore question whether the special taxing district's proposed inconsistent use of the property would be immune from municipal zoning ordinances. In your letter of inquiry, you refer to the government function-proprietary function test. You state, citing to City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc., 322 So.2d 571 (2 D.C.A.Fla., 1975), that "[t]he governmental function-proprietary function test is limited in Florida to the case of a governmental unit acting within its own jurisdiction," and therefore inquire whether such a test may be applied to the instant inquiry where the district seeks to use property within the jurisdiction of Jacksonville Beach. Cf., City of Treasure Island v. Decker, 174 So.2d 756, 759 (2 D.C.A.Fla., 1965) ("a government within another government or even the governmental body itself if operating in a proprietary capacity is governed by the zoning regulations of the area in the absence of specific legislative pronouncement to the contrary"). You further inquire whether a governmental unit granted the power to condemn property is automatically immune from zoning regulations when it acts in furtherance of its designated public function.
In City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc., supra, the Second District Court of Appeal examined several of the tests, including the governmental-proprietary function test and the power of eminent domain test referred to in your letter, which had been utilized to decide the extent, if any, to which the use of land by a governmental unit is subject to the zoning regulations of another governmental unit. In reviewing the "power of eminent domain test," the court observed, inter alia, that the power to condemn simply provides a method whereby property can be acquired; it does not have anything to do with the use of the property. The court held that even if the appellees in Temple Terrace had asserted that it had the right to disregard the city's zoning on the basis of any kind of right of eminent domain which might be available, the court would not consider such a right to control the decision of the case. The court concluded that the balancing-of-interests test presented the fairest method by which the case at bar could be decided, stating at 579:
 When the state legislature is silent on the subject, the governmental unit seeking to use land contrary to applicable zoning regulations should have the burden of proving that the public interests favoring the proposed use outweigh those mitigating against a use not sanctioned by the zoning regulations of the host government.
Regarding the governmental-proprietary function test, the court stated at 577:
 The wisdom of the governmental-proprietary test is subject to question. [citations omitted] Its applicability in Florida now seems limited to situations where a governmental unit seeks to violate its own zoning ordinance. See Orange County v. City of Apopka, [299 So.2d 652 (4 D.C.A.Fla., 1974)]. (emphasis supplied by court) Presumably, if a governmental agency is authorized to perform a function, it should not make any difference whether this function is governmental or proprietary in nature for the purpose of complying with local zoning. (e.s.)
See, Orange County v. City of Apopka, supra, in which the district court declined to extend the application of the governmental-proprietary function test for resolving zoning conflicts to the circumstance where a governmental unit proposes to utilize property which is owned within the jurisdiction of another governmental unit contrary to the existing zoning regulations, declaring at 655 that "the better rule, the rule allowing for the greatest flexibility and fairness, is one which requires that one governmental unit be bound by the zoning regulations of another governmental unit in the use of its extraterritorial property, purchased or condemned, in the absence of specific legislative authority to the contrary"; under such circumstances, the intruding governmental unit should apply to the appropriate zoning authority of the host governmental unit for a variance or special exception. See also, Palm Beach County v. Town of Palm Beach, 310 So.2d 384 (4 D.C.A.Fla., 1975).
In City of Temple Terrace, supra, the district court discussed the fallacy of applying the governmental-proprietary function test by comparing two judicial decisions wherein one held that the operation of a sewage disposal plant was governmental in nature while the other held that it was proprietary. See, County of Westchester v. Village of Mamaroneck, 255 N.Y.S.2d 290 (1964), and Jefferson County v. City of Birmingham, 55 So.2d 196 (Ala. 1951). Cf., AIA Mobile Home Park, Inc. v. Brevard County, 246 So.2d 126
(4 D.C.A.Fla., 1971) (construction and operation of sewage disposal system is governmental).
On appeal, the Florida Supreme Court affirmed and adopted the decision of the district court. See, Hillsborough Association for Retarded Citizens, Inc. v. City of Temple Terrace, 332 So.2d 610, (Fla. 1976). Recognizing that the zoning powers of municipalities are derived from the State Constitution, the Court declared that "[e]xcept where a specific legislative directive requires a non-conforming use in the particular area, local administrative proceedings will provide the forum in which the competing interests of governmental bodies are weighed." 332 So.2d at 613.
Subsequent court decisions have applied a balancing-of-public-interests test for resolving zoning conflicts between different governmental bodies. See, e.g., Village of North Palm Beach v. School Board of Palm Beach County, 349 So.2d 683 (4 D.C.A.Fla., 1977), cert. denied, 354 So.2d 985 (Fla. 1977), appeal dismissed, 358 So.2d 133 (Fla. 1978), in which the court applied the balancing-of-interests test and rejected the "rigid" governmental-proprietary function test for resolving zoning conflicts between governmental units. See also, Pal-Mar Water Management District v. Martin County, 377 So.2d 752 (4 D.C.A.Fla., 1979); and State v. City of Riviera Beach, 397 So.2d 685
(Fla. 1981). And see, AGO's 75-207, 79-37 and 82-24. See, AGO 76-114 which noted the recently developed general rule in Florida that unless the Legislature determines otherwise, one governmental unit in using its property located within the jurisdictional boundaries of another governmental unit is bound by the zoning regulations of that governmental unit.
I am not aware of, nor have you brought to my attention, any general or special law expressly granting immunity to the Beaches Public Hospital Special Taxing District from local zoning ordinances. Therefore, based upon the foregoing, it appears that the district would be subject to the City of Jacksonville Beach's zoning regulations. The district may apply to the appropriate zoning authority of the city to seek local approval for its nonconforming use, and the courts are available to review the balance struck in such administrative proceedings. See, Hillsborough Association for Retarded Citizens, Inc. v. City of Temple Terrace, supra at 613, n. 5.
In conclusion, until judicially or legislatively determined to the contrary, it is my opinion that in the absence of a specific legislative directive requiring a nonconforming use in a particular area, the Beaches Public Hospital Special Taxing District is subject to local municipal zoning ordinances governing property which the district wishes to condemn under its power of eminent domain. The district may seek local approval for its nonconforming use from the appropriate local zoning authority which should apply a balancing-of-interests test in reviewing such application.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General